**RAHAYEL v. McCAMPBELL, Federal Prohibition Administrator, et al.**

No. 5095.

District Court, E. D. New York.

Nov. 18, 1930.

David F. Price, of Brooklyn, N. Y. (Samuel Binder, of Brooklyn, N. Y., of counsel), for complainant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg and Geo. H. Bragdon, Asst. U. S. Attys., both of Brooklyn, N. Y. and John E. O'Neill, Legal Adviser, Treasury Department, of New York City, of counsel), for defendants.

BYERS, District Judge.

The complainant in this case held a permit to use specially denatured alcohol in the manufacture of toilet water, perfumery, and the like.

His establishment occupies the fourth floor of a four-story business and loft building at 351–353 Atlantic avenue, borough of Brooklyn; he has been engaged in his present occupation for upwards of twenty years, and certainly has had a permit since 1921.

There is no evidence of questionable conduct on the part of this permittee prior to May 6, 1930; nor is there anything in the record leading to the conclusion that he was conducting other than a legitimate enterprise during these many years.

On May 5, 1930, the two agents who testified before the hearer had the permittee's premises under observation from an empty apartment fifty feet east of the premises in question and on the opposite side of the street. It is to be presumed that these agents thought they had reason to place these premises under observation, but nothing apparently occurred on the 5th to fortify that conclusion.

At the street level, the westerly half of the building is occupied by a store and salesroom not related to the permittee, and the easterly half by a space evidently used for storing automobiles; the doors are of solid wood and, when closed, cover the entire opening to that space; at the rear of the space, there is an entrance to a freight elevator, which serves all of the floors in the building, including that of the permittee. Therefore, merchandise intended for any of the floors above the street level reaches the elevator in the rear of the storage space or garage, so-called, and likewise merchandise to be delivered from any of the tenants of the building would be taken from the said elevator at that place.

The evidence before the hearer shows that, on the afternoon of May 6, 1930, at about 3:18 o'clock, an automobile truck backed into the garage premises, which truck was marked "National Light and Electric Co., Newark, N. J."; that is the name of the tenant of the second floor of the premises. The truck left at 3:51 p. m., but no statement was made by the agents as to whether the truck was empty either in arriving or leaving.

At 3:52 p. m., it is said that two cars of the sedan type, which had first been parked on the same side of the street as the premises in question, were backed into the garage space, and the doors were closed. At 4:25 p. m. these two cars emerged from the garage, prior to which the man who drove one of them, namely, Brignoli, had come out in front of the premises, and was there for about five minutes, looking about.

The first car was permitted to depart, but the second was intercepted by the two agents, one of whom stopped it at the point of a gun. The agents stated that they took the license numbers of both cars, and examined the chauffeur's license of Brignoli, who was driving the car which was stopped. Agent Croake testifies that he searched the car, and states: "I then made a search of the car and found *under the seats, front and rear,* 20 five-gallon cans of specially denatured alcohol." (Italics supplied.) Samples were taken from these cans, and. upon analysis, were shown to contain: some, formula No. 40, and some, formula No. 39—A, alcohol.

This permittee was allowed to withdraw 900 wine gallons quarterly of formula No. 40, and 50 wine gallons quarterly of formula No. 38—B, and the same quantity of formula No. 39—A.

Brignoli seems to have been placed under arrest, and the permittee was sought in the permit premises at about 4:30 p. m.; he was not present, but was seen to leave the building at 5:00 p. m. in company with some of the other occupants, and, upon emerging, was taken into custody by the other agent who took him upstairs to his own premises, and there he was questioned by both agents, and denied knowledge of the removal of any alcohol from his premises.

His alcohol storeroom was found to be locked, and contained, when opened by the permittee, two full drums, three empty drums, and an empty barrel. The full drums contained denatured alcohol, formula No. 40, and their numbers are stated in the record.

The complainant testifies that, on May 3, 1930, he had used 60 gallons, and, on the 5th, 90 gallons, and on the 6th, 9 gallons, in the manufacture of his products, and that some finished product had left his premises on the 6th at about 11 o'clock in the morning, namely, about 50 gallons, and that the rest was in the tanks, and he made no shipments in the afternoon.

The agents testified that the premises bore the odor of perfumery, and that men were at work when they arrived there.

It will be seen that there is no direct evidence to connect this complainant or any of his agents with the denatured alcohol said to have been found in the 20 cans which the agent says were under the front and rear seats of the second sedan.

There was no attempt made, on the part of the agent, to indicate anything concerning the construction of the second car which would reveal its capacity to accommodate twenty 5-gallon cans under the front and rear seats. It is testified that these cans were ordinary cans that one can buy in the open market, and, while the dimensions of such a can are not stated, any one possessing a practical familiarity with pleasure automobiles in current use knows that twenty such cans could not be stowed under the front and rear seats, unless the car was specially constructed for some such purpose.

The record is quite deficient in any proof concerning the ownership of either of the cars or peculiarity in construction on the part of the one said to have carried the twenty 5-gallon cans in question.

Brignoli was not examined; nor was his absence accounted for. The hearer, in his findings, refers to a person by the name of Rignalio, whose name does not appear in the record.

There is no evidence in the record which excludes the reasonable possibility that the alcohol which was found in some quantity, apparently, in one of these sedans, had been brought into the storeroom or garage by some agency entirely unrelated to this permittee.

Under these circumstances, the record is not believed to be complete enough to enable this court to pass upon so serious an issue as one which would deprive the permittee of the right to maintain a lawful business which he has apparently conducted according to the provisions of law for over nine years prior to May, 1930. In the belief that all of the testimony on this subject has not been offered, the record will be remitted to the Administrator, in order that all available proof may be offered. Meanwhile this court will retain jurisdiction of the case, pending

the filing herein of all the evidence available on this subject, within thirty days from the date hereof, together with such further findings as the Prohibition Administrator may deem to be appropriate and in accordance with the testimony.